## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN CONOR JACOBS, MD,

       Plaintiff,

vs.

KARL T. CLEBAK, MD, *et al.*,

       Defendants.

CASE NO:  1:26-CV-01167

JUDGE WILSON

---

### THE REPLY MEMORANDUM OF LAW OF DEFENDANTS' KARL T. CLEBAK, MD, KEVIN P. BLACK, MD, AND NASROLLAH GHAHRAMANI MD, MS, FACP, IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Dated: June 12, 2026

**BUCHANAN INGERSOLL & ROONEY PC**
Anthony (T.J.) Andrisano, Esq. (Pa ID 201231)
Geoffrey F. Sasso, Esq. (Pa. ID 202936)
Makenzie P. Leh, Esq. (PA. ID. 333895)
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
T: 215-665-8700
F: 215-665-8760
anthony.andrisano@bipc.com
geoffrey.sasso@bipc.com
makenzie.leh@bipc.com

*Attorneys for Defendants, Karl T. Clebak, MD, Kevin P. Black, MD, and Nasrollah Ghahramani MD, MS, FACP*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................1

LEGAL ARGUMENT...........................................................................................2

I.  Dr. Jacobs Was a Resident at MSHMC, Which is a Private Entity,
    Separate and Distinct from The Pennsylvania State University .....................2

II. The Complaint's Allegations Do Not Satisfy the Nexus Test for State
    Action in Light of the *Borrell* Holding...........................................................4

III. The Complaint's Allegations Do Not Satisfy the Symbiotic
     Relationship Test for State Action...................................................................9

IV. Dr. Jacobs Received all Process Due to Him under the Law and the
    MSHMC Policy .................................................................................................11

V.  Leave to Amend Should Be Denied As Futile and Prejudicial to The
    HMC Physicians ................................................................................................14

CONCLUSION...................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Billups v. Penn State Milton S. Hershey Medical Ctr.*,
  910 F. Supp. 745 (M.D. Pa. 2012)................................................................7, 8

*Borrell v. Bloomsburg Univ.*,
  63 F.Supp.3d 418 (M.D. Pa. 2014)...................................................................5

*Borrell v. Bloomsburg Univ.*,
  870 F.3d 154 (3d Cir. 2017) ...............................................................3, 4, 5, 6

*In re Burlington Coat Factory Securities Litigation*,
  114 F.3d 1410 (3d Cir. 1997) ......................................................................3, 11

*Davis v. Mann*,
  882 F.2d 967 (5th Cir. 1989) ...........................................................................6

*Doe v. Baum*,
  903 F.3d 575 (6th Cir. 2018)............................................................................9

*Doe v. Pennsylvania State University*,
  336 F.Supp.3d 441 (M.D. Pa. 2018).................................................6, 9, 11, 12

*Doe v. University of Sciences*,
  961 F.3d 203 (3d Cir. 2020) .....................................................................11, 12

*Furey v. Temple Univ.*,
  730 F.Supp.2d 380 (E.D. Pa. 2010).................................................................9

*J. Endres v. Northeast Ohio Medical Univ.*,
  938 F.3d 281 (6th Cir. 2019)..........................................................................10

*Mares v. Miami Valley Hosp.*,
  96 F.4th 945 (6th Cir. 2024)............................................................................6

*Osei v. Temple Univ.*,
  2011 WL 4549609 (E.D. Pa. 2011) .................................................................9

*Seldomridge v. Penn State Hershey Medical Ctr.*,
  2014 WL 2619371 (M.D. Pa. 2014)..............................................................7, 8

*Shane v. Fauver*,
　213 F.3d 113 (3d Cir. 2000) ...............................................................................11

the matter of *Terzian v. Montclair Hosp., LLC*,
　2023 WL 2473454 (D.N.J. 2023) ....................................................................5, 6

*Untracht v. Fikri*,
　454 F.Supp.2d 289 (W.D. Pa. 2006)...................................................................5

*Werner v. Werner*,
　267 F.3d 288 (2001)............................................................................................2

*Williams v. Pennsylvania State University*,
　2020 WL 5291985 (M.D. Pa. 2020) ...................................................................9

*Winnick v. Manning*,
　460 F.2d 545 (2d Cir. 1972) ...............................................................................9

**Rules**

F.R.E. 201(b).......................................................................................................2

Fed. R. Civ. P. 12(b)(6).......................................................................................1

Defendants, Karl T. Clebak, M.D., Kevin P. Black, M.D., and Nasrollah Ghahramani, M.D., M.S., F.A.C.P. (the "HMC Physicians" or "Defendants"), hereby file this Reply Memorandum of Law in Support of their Motion to Dismiss the Complaint of Plaintiff, Brian Conor Jacobs, M.D. ("Dr. Jacobs" or "Plaintiff"), for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This lawsuit's allegation of state action is a sham. While the standard for a motion to dismiss is highly deferential to a plaintiff, this standard is not a license to assert knowingly-inaccurate allegations to legitimize an invalid claim. Here, Dr. Jacobs cites to (but does not attach) multiple documents in an attempt to support his claim that he was enrolled in a Penn State University residency program so as to distinguish this matter from unfavorable Third Circuit holdings. Those documents flatly disprove this assertion and demonstrate that any claim of state action is invalid and, more importantly, that Dr. Jacobs has known this from the start.

Even assuming state action exists – which it does not – Dr. Jacobs' procedural due process claim is invalid. Dr. Jacobs concedes that the Milton S. Hershey Medical Center ("MSHMC"), the entity responsible for his residency program, followed its procedures and bases his claim on a self-serving, after-the-fact assertion that the process was not "fair." To support this contention, he cites almost exclusively to foreign case law holding that additional procedures *may* be required in situations

hinging solely on credibility but fails to explain why this case is such a situation. Indeed, it is not as MSHMC considered substantial forms of evidence that did not hinge on witness credibility.

Lastly, the opposition's request for leave to amend to assert a breach of contract claim in lieu of a due process claim should be denied as futile and prejudicial. It would be prejudicial to recast this expedited lawsuit's single claim at this juncture and, moreover, the lone case cited in support of this hypothetical claim does not support its viability on these facts.

## LEGAL ARGUMENT

### I. DR. JACOBS WAS A RESIDENT AT MSHMC, WHICH IS A PRIVATE ENTITY, SEPARATE AND DISTINCT FROM THE PENNSYLVANIA STATE UNIVERSITY

The opposition leads the issue of state action by faulting the HMC Physicians for "…never explicitly argu[ing] that PSHMC is a private party" even though Dr. Jacobs' Complaint expressly alleges MSHMC is a "private entity." *See* Dkt. No. 1 at ¶ 56; *see also* Dkt. No. 33 at p. 10. To the extent it was necessary to refute an allegation that was not made, the HMC Physicians stated multiple times that MSHMC is, in fact, a private hospital. *See* Dkt. 30 at p. 1 ("recognizing that he cannot affirmatively plead that employees of a private hospital are state actors…"); pp. 32-35 (discussing how "the relationship between a university and a private hospital formed for purposes of administering a program is insufficient to deem employees state actors"). Moreover, this Court can and should take judicial notice

2

that MSHMC is a domestic, nonprofit corporation with a registered office of 100 Crystal A Drive, Hershey, PA 17033. *See* F.R.E. 201(b); *Werner v. Werner*, 267 F.3d 288 (2001). Moreover, publicly filed financial reports indicate that MSHMC is a wholly-owned subsidiary of Penn State Health, which is a separate nonprofit corporation that is partially owned by Highmark Health, a private entity.[1] To be sure, MSHMC is a private entity.

To support his inaccurate claim that he was a resident with a public institution, Dr. Jacobs makes allegations he knows are not true and cites to (but does not attach) multiple documents that invalidate those allegations. For example, Dr. Jacobs references his residency contract and claims it establishes he was "not an employee of a private entity." *See* Dkt. No. 33 at p. 11, citing Dkt. No. 1 at ¶ 17. But the first two sentences of Dr. Jacobs' "Resident Agreement" explicitly state the agreement is between "Penn State Health Milton S. Hershey Medical Center, a Pennsylvania nonprofit corporation" and the resident. *See* Agreement (**Exhibit A**). Penn State University is not mentioned in the document. *Id.* Moreover, when Dr. Jacobs was terminated in November 2025 – a document he references in his Complaint but again declines to attach – the operative correspondence was from Penn State Health and cited a Penn State Health policy. *See* Dkt. No. 1 at ¶ 21; *see also* 11/2025 Letter

---

[1]https://budgetandfinance.psu.edu/sites/budgetandfinance/files/psu-fy25-audited-financial-statements-final.pdf

(**Exhibit B**). Lastly, after Dr. Jacobs exhausted all levels of appeal and was terminated from the residency program, the termination letter – again referenced in his Complaint but not attached to it – was from Penn State Health, not Penn State University.[2] *See* Dkt. No. 1 at ¶ 51; *see also* 03/2026 Letter (**Exhibit C**).

Simply stated, this Court need not take as true allegations that are flatly inaccurate, and the truth is that Dr. Jacobs was enrolled in a residency program run by MSHMC, a private institution. Keeping in mind the patent inaccuracy of many of Dr. Jacobs' allegations, the HMC Physicians will now address Dr. Jacobs' claims of state action.

## II.    THE COMPLAINT'S ALLEGATIONS DO NOT SATISFY THE NEXUS TEST FOR STATE ACTION IN LIGHT OF THE *BORRELL* HOLDING

Because he can no longer ignore *Borrell*'s holding, Dr. Jacobs misstates that case's facts and hides behind an inaccurate allegation that he was enrolled in a Penn State University program to feign the existence of a "close nexus" between the HMC Physicians and the state. This is insufficient to survive a dismissal, and Dr. Jacobs' efforts to distinguish *Borrell* are without merit.

---

[2]    It is well settled that documents integral to and/or relied on by the complaint may be considered on a motion to dismiss. *See In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("what the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.").

First, Dr. Jacobs is inaccurate in his claim that the defendant at issue in *Borrell* was "a hospital nurse anesthetist who managed the clinical component program." *See* Dkt. No. 33 at pp. 19-20. To the contrary, this individual was the director of the program and a dual employee hired and paid by both the private hospital (Geisinger Medical Center) and Bloomsburg University, a public university operated by the Commonwealth of Pennsylvania. *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 158 (3d Cir. 2017). Here, the Complaint concedes the HMC Physicians are MSHMC employees who hold uncompensated faculty appointments with the College of Medicine. *See* Dkt. No. 1 at ¶ 13. Therefore, for purposes of analyzing *Borrell*, they are even less analogous to the dual-employee defendant in *Borrell* who was held to not be a state actor.[3]

Dr. Jacobs then attempts to distinguish *Borrell*'s nurse anesthetist program by claiming it was a joint program between the hospital and Bloomsburg, whereas his Complaint alleges the residency program at issue was run by Penn State University. This is not true. The plaintiff in *Borrell* was a student at Bloomsburg University and participated in the university's program. *See Borrell*, 870 F.3d at 157. In contrast, Dr. Jacobs signed a contract with MSHMC (not Penn State University), was terminated by MSHMC under a Penn State Health policy, participated in MSHMC's

---

[3]    Similarly, Dr. Jacobs' attempt to analogize Bloomsburg's director of Nursing in *Borrell* to the HMC Physicians has even less merit.

Graduate Medical Education and Due Process Policy[4] (*see* Dkt. No. 1 at ¶ 51), and was ultimately dismissed by MSHMC. *See* **Exhibits A-C**. Thus, the *Borrell* program's connections to Bloomsburg were significantly greater than Dr. Jacobs's program's purported connection to Penn State University.

The opposition also ignores multiple, additional facts outlined in *Borrell* that demonstrated the strength of the university/hospital relationship but were still not enough to show state action. In *Borrell*, the university and the hospital shared revenue, governance, program logistics, and marketing responsibilities for the program and also jointly prepared the program's codes of conduct, provided student resources, and conferred completion certifications. *Borrell,* 870 F.3d at 157; *Borrell v. Bloomsburg Univ.*, 63 F.Supp.3d 418, 436 (M.D. Pa. 2014). These allegations are similar to, but greater in quantity and quality than Dr. Jacobs' allegations of a joint Penn State/MSHMC program. *See* Dkt. No. 1 *generally*. In addition, the *Borrell* defendant dismissed the plaintiff on joint letterhead from the university and the hospital – a fact also not present here. *See Borrell*, 870 F.3d at 159; *see also* **Exhibit C.**

To bolster his untrue allegations of "Penn State faculty hats,", Dr. Jacobs repeatedly points to the HMC Physicians' dual appointments as physicians with

---

[4]    Of note, the section of the website containing this policy notes that MSHMC (not Penn State University) is the "ACGME-accredited Sponsoring Institution" for the medical residency program.

MSHMC and faculty of the College of Medicine. However, case law from this circuit holds that such a fact is irrelevant. *See Untracht v. Fikri*, 454 F.Supp.2d 289, 324 (W.D. Pa. 2006). Dr. Jacobs attempts to distinguish *Untracht* by claiming it did not involve residents or students but ignores the fact that it involved a § 1983 claim that required a showing of state action. *See id.* That court's decision makes clear that an individual holding dual roles with a university and a hospital is not relevant to the issue of state action – similar to how the *Borrell* court found unpersuasive the defendant's joint employment by a public university and a private hospital. *See id.*

Because *Borrell* is a death knell for his claim, Dr. Jacobs cites to three additional cases involving residents, two of which are not from this circuit, and all of which are easily distinguishable. He first cites to the matter of *Terzian v. Montclair Hosp., LLC*, 2023 WL 2473454 (D.N.J. 2023) for the proposition that state action exists over individuals running a residency program in light of that court's decision that a resident was entitled to constitutional due process. This too is inaccurate. The terms "state action", "state actor", and "1983" do not appear in the *Terzian* opinion. *See Terzian, LLC*, 2023 WL 2473454. Rather, the opinion dealt with a motion for preliminary injunction, and the issue of state action was not raised in the briefing. *Id.* at *1. *Terzian* is, therefore, meaningless to the issue before this Court.

Dr. Jacobs then cites to *Mares v. Miami Valley Hosp.*, 96 F.4th 945 (6th Cir. 2024), a Sixth Circuit case that permitted a resident to assert a procedural due process claim. The defendants in *Mares* were the hospital, Wright State University (WSU), and several WSU employees. *Mares*, 96 F.4th at 948-949. Unlike Dr. Jacobs, the plaintiff was enrolled in a ***university*** program and signed a WSU Graduate Medical Education Agreement. *See id.* at 949. Critically, the plaintiff's § 1983 claims were asserted only against WSU and its employees – not the hospital that participated in the program – and the court noted that "procedural due process claim against [the hospital]…fails" because the hospital is a private entity. *See id.* at n. 5. Thus, *Mares*, like *Borrell*, does not support Dr. Jacobs' claim – it invalidates it.

Lastly, Dr. Jacobs cites to *Davis v. Mann*, 882 F.2d 967 (5th Cir. 1989) for the proposition that all residents should be treated as students. As was the case in *Mares*, state action was neither raised nor addressed in *Davis* because the plaintiff signed a contract with the University of Mississippi to enter their General Practice Residency Program and filed suit against the university's dean and members of its board of trustees. *Davis*, 882 F.2d at 968. Again, Dr. Jacobs did not sign an agreement with Penn State University, and thus, *Davis* is inapplicable.

While the opposition takes issue with the HMC Physicians stating as such, the issue of state action truly begins and ends with the holding of *Borrell*. The facts argued by the plaintiff in that case to show state action were stronger and more

8

pervasive than those alleged herein. Dr. Jacobs has not meaningfully addressed those facts and can only fabricate untrue assertions about the nature of MSHMC's residency program and pretend that he is a "student" when he is, in fact, a 2023 graduate of Robert Wood Johnson Medical School, a licensed physician, and was employed by a private hospital. Because well-settled Third Circuit decisions hold that institutional ties, dual appointments, and joint programs are not *per se* proof of state action, the HMC Physicians cannot be state actors, and the motion to dismiss should be granted.

### III.    THE COMPLAINT'S ALLEGATIONS DO NOT SATISFY THE SYMBIOTIC RELATIONSHIP TEST FOR STATE ACTION

In a further effort to show state action, Dr. Jacobs makes the dubious argument that MSHMC and Penn State University "are essentially the same entity" and, because Penn State University has, in certain circumstances, been held to be a state actor, so too is MSHMC. *See* Dkt. No. 33 at p. 20. Neither the cited case law, the Complaint's allegations, matters of public record, nor common sense support a claim that every act by all employees of MSHMC constitutes state action.

Precious little case law is cited in support of this argument, and Dr. Jacobs' attempts to draw an analogy between the Commonwealth/Penn State University relationship and the Penn State University/MSHMC relationship by citing to two cases, *Billups v. Penn State Milton S. Hershey Medical Ctr.*, 910 F. Supp. 745, 757 (M.D. Pa. 2012), and *Seldomridge v. Penn State Hershey Medical Ctr.*, 2014 WL

9

2619371, *4 (M.D. Pa. 2014). Contrary to Dr. Jacobs' claim, neither case supports the proposition that MSHMC physicians are state actors for purposes of § 1983 claims, generally or in this situation.[5]

The events in both *Billups* and *Seldomridge* predate the existence of Penn State Health (founded in 2014)[6] and, therefore, do not speak to MSHMC's current status. Moreover, neither case dealt with a residency program, and both decisions involved the denial of a motion to dismiss based on the plaintiffs' allegations that certain physicians were members of a team that assisted a local government agency in investigating potential criminal acts of child abuse as opposed to treating injured children. *Billups*, 910 F. Supp. at 745, 757 (M.D. Pa. 2012) ("Accepting Plaintiffs' allegations as true, the examinations of L.B. were not conducted for the purpose of treating her injuries but, rather, for the purpose of determining whether her injuries were the result of criminal activity. At this juncture, these allegations support a finding of state action and are sufficient to withstand a motion to dismiss."); *Seldomridge*, 2014 WL 2619371, *4 (M.D. Pa. 2014). Quite obviously, cases involving allegations that physicians were investigating potential criminal activity

---

[5]    For this Court's information, the undersigned counsel for the HMC Physicians, Geoffrey Sasso, represented the physician defendants in *Billups* from 2013 through issuance of the Third Circuit decision in 2018. In addition, Mr. Sasso was part of the team that handled the *Seldomridge* motions. Mr. Sasso is well-versed in both matters.

[6]    https://www.pennstatehealth.org/locations/milton-s-hershey-medical-center/about-us

alongside government agencies do not support the existence of a symbiotic relationship on the instant facts.

**IV.   DR. JACOBS RECEIVED ALL PROCESS DUE TO HIM UNDER THE LAW AND THE MSHMC POLICY**

After proceeding through MSHMC's grievance process and attending three hearings, Dr. Jacobs now claims he was deprived of procedural due process because, in his view, the process was not "fair" because he was not permitted to cross-examine witnesses and did not receive copies of all the evidence against him. However, neither the applicable policy nor case law from this Circuit hold that such procedures are required. Therefore, in the event Dr. Jacobs survives the challenge to state action, this Court should dismiss the Complaint as failing to plead a valid claim for procedural due process.

Dr. Jacobs cites no case law holding that an accused must be provided with all evidence against them other than general law holding that the purpose of hearings is to determine the truth. Indeed, no such case law exists as these are not criminal proceedings. *See Furey*, (rejecting discovery-like procedures and noting that student is entitled to notice of the charges and the basis of the charges). Here, Dr. Jacobs acknowledges he was provided with the primary piece of evidence - the Cybersecurity Report – which he further acknowledges was reviewed and addressed in his own expert's report, which he then submitted for MSHMC's consideration during this process. *See* Dkt. No. 1 at ¶¶ 46.  He also was admittedly aware of the

11

other forms of evidence considered, so nothing was "secret." *Id.* at ¶ 38. Accordingly, any claim of a due process violation founded on an assertion that all evidence was not turned over to Dr. Jacobs is without merit.

As to cross-examination, holdings from this Circuit firmly state this is not a required element of due process in the disciplinary setting. *Furey v. Temple Univ.*, 730 F.Supp.2d 380 (E.D. Pa. 2010) (cross-examination is not a "necessary part of due process in the student disciplinary context" but holding it "would have been helpful" in a situation when the panel aggressively crossed-examined the accused, but not the accuser); *see also Osei v. Temple Univ.*, 2011 WL 4549609, * 10 (E.D. Pa. 2011) ("the procedures utilized in this case provided Plaintiff with adequate due process protections, despite his inability to cross-examine Dr. Krow or other University witnesses, since he was able to submit his own evidence, give his side of the story, and submit a timely appeal").

In opposition, Dr. Jacobs fails to cite a single case to the contrary and, instead, relies heavily on cases from other circuits holding that such a mechanism may *potentially* be required in cases hinging on issues of credibility and cases where a defendant's policies provided for cross-examination. *See, e.g.*, *Winnick v. Manning*, 460 F.2d 545, 550 (2d Cir. 1972) (discussing cross-examination "might have been essential" if the "case had resolved into a problem of credibility"); *Doe v. Pennsylvania State University*, 336 F.Supp.3d 441, 450 (M.D. Pa. 2018) (holding

12

cross-examination may be required "where everyone agrees on virtually all salient facts except one—*i.e.*, whether or not Ms. Roe consented to sexual activity with Mr. Doe—there is really only one consideration for the decisionmaker: credibility"); *Doe v. Baum*, 903 F.3d 575, 581-82 (6th Cir. 2018) (holding cross-examination was required because the "university's decision rested on a credibility determination: the Board found Doe responsible after concluding that Roe and her witnesses were 'more credible' than Doe and his"); *Williams v. Pennsylvania State University*, 2020 WL 5291985, *8 (M.D. Pa. 2020) (discussing cross-examination may be required in a case where "there [was] really only one consideration for the decisionmaker: credibility").

Dr. Jacobs closes with a citation to yet another foreign case – *J. Endres v. Northeast Ohio Medical Univ.*, 938 F.3d 281 (6th Cir. 2019) – claiming it presents a "strikingly similar scenario…" where the plaintiff student was improperly denied the right to cross-examine certain witnesses. Dkt. No. 33 at p. 31. Not so. Like many of the cases cited in the opposition, the *J. Endres* defendant's policies provided that, following submission to "the formal disciplinary body, the student has a right to an adversarial hearing—where he may learn the evidence against him, cross-examine witnesses, and present evidence in his defense." *J. Endres*, 938 F.3d at 287. It is not surprising the Sixth Circuit held that denying the plaintiff a form of process expressly provided for in the defendant's policy was a due process violation.

13

Despite these holdings, Dr. Jacobs makes no effort to argue that credibility was the sole factor here and only blithely claims he was "never provided the opportunity to cross-examine key witnesses, including the PSHMC employees who drafted the Cybersecurity Report." Dkt. No. 33 at p. 25. First, it is absurd to contend that a report concluding multi-factor identification was used to unlock a phone is akin to an accuser's testimonial statement. Second, this report was not the only piece of evidence considered, as MSHMC also considered its interview of Dr. Jacobs, text messages, social media pictures, and work schedules. In addition, as Dr. Jacobs concedes, the only evidence he submitted on his behalf was a position letter prepared by counsel, declining to provide an explanation in his own words. *See* Dkt. No. 1 at ¶ 35(b).

The law of this Circuit is clear – cross-examination may be required if the sole issue is credibility. The law does not hold that cross-examination is required any time there are "competing narratives." To be sure, unless an accused **admits** to the charges against him or her, there will always be competing narratives, and the law certainly does not require cross-examination in every instance. Accordingly, Dr. Jacobs received all process due under both the law and MSHMC's policy, and his claim to the contrary must fail.

V.      **LEAVE TO AMEND SHOULD BE DENIED AS FUTILE AND PREJUDICIAL TO THE HMC PHYSICIANS**

14

As a last-ditch effort to save his claim, Dr. Jacobs asks for leave to amend to assert a state law claim for breach of contract based on *Doe v. University of Sciences*, 961 F.3d 203 (3d Cir. 2020). This request should be denied.

This request is not properly made, as leave to amend is granted to "cure a deficiency." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Dr. Jacobs does not ask for leave to cure his due process claim; he requests leave to assert a new claim against an entirely new party.[7] Clearly, Dr. Jacobs cannot sue the HMC Physicians for breach of contract, as they are merely employees of the party with whom he contracted, MSHMC. Moreover, granting leave to amend at this juncture would be unduly prejudicial to the HMC Physicians. Because Plaintiff sought potential relief as soon as possible, Dr. Jacobs desired an expedited discovery and trial track for his single-claim lawsuit. Discovery responses based on this one claim have been served, and a trial is scheduled for November. It would be unfairly prejudicial to the HMC Physicians to scrap the substantial work done on an expedited basis to "redo" the pleadings phase of this lawsuit.

In addition, Dr. Jacobs' request to amend based on the holding of *Doe* is futile. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434. *Doe* involved a Title IX policy which stated the defendant university would investigate and resolve reports

---

[7]    Recall that Dr. Jacobs previously filed suit against several MSHMC nurses in York County and then discontinued that lawsuit in lieu of the instant lawsuit. Providing leave to amend would essentially be Dr. Jacobs' third attempt to blame someone else for his dismissal.

15

in a manner that was "adequate, reliable, impartial, prompt, fair, and equitable" to the accused student and to "support complainants and respondents equally." *Doe*, 961 F.3d at 206. In holding the plaintiff stated a claim by alleging that a truncated hearing was not "fair," the Third Circuit recognized that the situation in that case involved the investigation and adjudication of criminal activity, which was not within the province of a university. *Id.* at 211-212 The court further noted that Title IX/sexual assault matters "differ from garden-variety breach of contract disputes" because of unfair bias towards accused students due to a 2011 movement within universities to limit protections afforded to the accused students in such situations. *Id.* at 213-214. *Doe* certainly does not stand for the proposition that every allegation of an "unfair" disciplinary process gives rise to a breach of contract claim.

Because there are no amendments that would remedy the deficiencies outlined above and because Dr. Jacobs should not be granted leave to recast this entire lawsuit to assert a futile claim, the Complaint should be dismissed with prejudice and without leave to amend.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the moving papers, Defendants, Karl T. Clebak, M.D., Kevin P. Black, M.D., and Nasrollah Ghahramani, M.D., M.S., F.A.C.P., respectfully request that this Honorable Court grant their Motion to Dismiss.

16

Dated: June 12, 2026

Respectfully Submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Geoffrey F. Sasso*
Geoffrey F. Sasso, Esq. (Pa. ID 202936)
Anthony (T.J.) Andrisano, Esq. (Pa ID 201231)
Makenzie P. Leh, Esq. (PA. ID. 333895)
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
T: 215-665-8700
F: 215-665-8760
geoffrey.sasso@bipc.com
anthony.andrisano@bipc.com
makenzie.leh@bipc.com

*Attorneys for Defendants, Karl T. Clebak, MD, Kevin P. Black, MD, and Nasrollah Ghahramani MD, MS, FACP*

17

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7.8(b)(2)</u>

The undersigned counsel hereby certifies that this Reply Brief is not in excess

of 5,000 words. The word count reflected is 4,003.

Dated: June 12, 2026                    /s/ Geoffrey F. Sasso
                                        Geoffrey F. Sasso, Esquire
                                        *Attorney for Defendants, Karl T. Clebak,*
                                        *M.D., Kevin P. Black, M.D., and Nasrollah*
                                        *Ghahramani, M.D., M.S., F.A.C.P.*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and complete copy of the foregoing document was filed through the CM/ECF system and will be served electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: June 12, 2026

*/s/ Geoffrey F. Sasso*
Geoffrey F. Sasso, Esquire
*Attorney for Defendants, Karl T. Clebak, M.D., Kevin P. Black, M.D., and Nasrollah Ghahramani, M.D., M.S., F.A.C.P.*

19