**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRIAN CONOR JACOBS, MD,<br>Plaintiff,<br>vs.<br>KARL T. CLEBAK, MD, *et al.*,<br>Defendants. | CASE NO: 1:26-CV-01167<br>JUDGE WILSON |

**THE ANSWER WITH AFFIRMATIVE DEFENSES OF DEFENDANTS, KARL T. CLEBAK, MD, KEVIN P. BLACK, MD, AND NASROLLAH GHAHRAMANI MD, MS, FACP, TO PLAINTIFF'S COMPLAINT**

Defendants, Karl T. Clebak, MD, Kevin P. Black, MD, and Nasrollah Ghahramani, MD, MS, FACP, (collectively the "HMC Physicians"), by and through their counsel, Buchanan Ingersoll & Rooney PC, hereby respond to the Complaint of Plaintiff, Brian Conor Jacobs, MD ("Plaintiff"). The numbered paragraphs of this Answer correspond to the like-numbered paragraphs of the Complaint and, unless admitted herein, each factual averment in the Complaint is denied.

## INTRODUCTION

1. Denied. This paragraph contains conclusions of law to which no responsive pleading is required. To the extent the allegations contained in this paragraph are deemed factual, these allegations are admitted in part and denied in part. It is admitted only that Plaintiff has brought such a claim. The HMC Physicians deny both the validity of that claim and Plaintiff's entitlement to relief.

2. Admitted in part; denied in part. It is admitted that, prior to his termination, Plaintiff was a physician employed by The Milton S. Hershey Medical Center ("MSHMC") and enrolled

in MSHMC's residency program until his termination in connection with founded accusations that he manufactured an item, which purported to be an email to him prepared by his supervisor. The remaining allegations contained in this paragraph are denied.

3. Denied. This paragraph contains conclusions of law to which no responsive pleading is required. To the extent the allegations contained in this paragraph are deemed factual, these allegations are denied. To the contrary, there was no "pre-determined outcome" and Plaintiff was given the opportunity to and did participate in MSHMC's grievance process and was advised of the content of the evidence supporting the accusations against him. By way of further response, this process was not rushed and it lasted approximately five months due to Plaintiff's requests for adjournments and additional time to produce purportedly-exculpatory evidence that he ultimately declined to produce.

4. Admitted.

a. Admitted.

b. Admitted in part; denied in part. It is admitted only that the HMC Physicians understand that Plaintiff's parents' home is located at 600 Oldershaw Avenue, Moorestown, New Jersey 08057. By way of further answer, while enrolled as a resident, Plaintiff's resided at 301 E. Second Street, Apt. 102, Hummelstown, PA 17036. The HMC Physicians are unaware of Plaintiff's current address and, accordingly, this allegation is denied.

5. Denied. To the contrary, Dr. Clebak is a physician employed by MSHMC as the Designated Institutional Officer ("DIO") and as a practitioner of family and community medicine. Dr. Clebak is based at the Nyes Road Family Practice located at 121 N. Nyes Road, Suite A, Harrisburg, Pennsylvania 17112. In addition, Dr. Clebak separately holds an uncompensated academic appointment of Professor of Family and Community Medicine with The Pennsylvania

State University's College of Medicine ("Penn State College of Medicine"), which is effective only for so long as Dr. Clebak is employed by MSHMC, and serves as the Associate Dean for Graduate Medical Education at Penn State College of Medicine. It is specifically denied that Dr. Clebak's DIO role with MSHMC (granting him authority over the Accreditation Council for Graduate Medical Education ("ACGME") programs of MSHMC) derives from The Pennsylvania State University ("Penn State") or Penn State College of Medicine.

a. Admitted in part; denied in part. It is admitted only that Dr. Clebak is the DIO for MSHMC, which is the ACGME-sponsoring organization for MSHMC's residency program. It is denied that Dr. Clebak oversees "all Graduate Medical Education Programs" as the ACGME governs only accredited residency and fellowship programs and it is further denied that Dr. Clebak is the DIO for Penn State College of Medicine . The remaining allegations contained in this subparagraph refer to the ACGME's Institutional Requirements, which are in writing and speak for themselves. All allegations that misstate, expand, or narrow the language of this writing are denied.

b. Admitted in part; denied in part. It is admitted only that Dr. Clebak is empowered to provide the injunctive relief sought in this Complaint by virtue of his role as MSHMC's DIO. The remaining allegations contained in this paragraph are denied.

c. Admitted in part; denied in part. It is admitted only that Plaintiff has made such a claim. It is denied that Plaintiff is entitled to any requested relief.

6. Denied. To the contrary, Dr. Black serves as Interim Vice Dean for Educational Affairs at Penn State College of Medicine and maintains a principal address in Hershey, Pennsylvania. It is denied that Dr. Black serves as Interim Vice Dean for Educational Affairs of MSHMC. The remaining allegations are denied.

a. Denied.

b. Admitted in part; denied in part. It is admitted only that Plaintiff has made such a claim. It is denied that Plaintiff is entitled to any requested relief.

7. Denied. To the contrary, Dr. Ghahramani is a physician employed by MSHMC as the Chief of the Division of Nephrology and, during the relevant time period referenced in the Complaint, was the Interim Chair of the Department of Medicine (but is no longer) and has an office address of 500 University Drive, Hershey, PA 17033. In addition, Dr. Ghahramani separately holds an uncompensated academic appointment as Professor of Medicine and Health Sciences with Penn State's College of Medicine, which is effective only for so long as Dr. Ghahramani is employed by MSHMC.

a. Denied.

b. Admitted in part; denied in part. It is admitted only that Plaintiff has made such a claim. It is denied that Plaintiff is entitled to any requested relief.

## JURISDICTION AND VENUE

8. Admitted in part; denied in part. It is admitted only that Plaintiff has made such a claim and that this Court has jurisdiction over said claim. It is denied that Plaintiff is entitled to any requested relief.

9. Admitted.

## FACTS

10. Denied. To the contrary, there is no entity known as "Penn State Milton S. Hershey Medical Center." MSHMC's proper legal name is "The Milton S. Hershey Medical Center." By way of further response, MSHMC is a domestic non-profit corporation that operates a research and academic medical center. Moreover, MSHMC is a subsidiary of Penn State Health, a separate,

domestic non-profit corporation. Penn State Health has a relationship with Penn State University through Penn State College of Medicine, the latter of which shares a campus with MSHMC.

a. Admitted in part; denied in part. It is admitted only that Penn State College of Medicine and the medical center were created prior to the relevant time period referenced in the Complaint. By way of further response, Penn State Health was established in 2014. The remaining allegations contained in this paragraph are denied.

b. Admitted.

11. Denied.

a. Admitted in part; denied in part. It is admitted only that Penn State University's largest campus is located in University Park, Pennsylvania, that Penn State College of Medicine is located in Hershey, and the latter is Penn State University's sole medical school. The remaining allegations contained in this paragraph are denied.

b. Admitted in part; denied in part. It is admitted only that Penn State Health was established in 2014 as a domestic nonprofit corporation and the parent organization of a multi-facility health system. It is further admitted that MSHMC and Penn State College of Medicine jointly participate in some operations, including certain research and educational initiatives. The remaining allegations contained in this paragraph are denied.

c. Admitted in part; denied in part. It is admitted that MSHMC is one of multiple hospitals/facilities contained within the Penn State Health system, which is an organization partially controlled by Highmark Health. It is further admitted that certain employees of MSHMC hold uncompensated academic faculty appointments with Penn State College of Medicine. The remaining allegations contained in this paragraph are denied.

12. Denied.

a. Denied. To the contrary, there exist two similar but distinct logo tiers for Penn State University and for Penn State Health with each entity's respective affiliates having their own lower-tier logo structure that utilizes its respective main entity's logo. By way of further response, the logo for MSHMC uses the Penn State Health – not the Penn State University – logo.

b. Denied. To the contrary, there is no "bookstore" at MSHMC. By way of further response, MSHMC's hospital gift shop – like several other independent businesses and distributors – sells, among other things, officially-licensed Penn State University-branded products, some of which carry the Penn State University slogan "We are Penn State."

13. Denied as stated. It is admitted only that physicians employed and paid by MSHMC are provided uncompensated academic faculty appointments with Penn State College of Medicine that are effective only for so long as the physician is employed by MSHMC. The remaining allegations contained in this paragraph are denied.

a.-c. The allegations of these subparagraphs are admitted in part and denied in part. It is admitted that the foregoing Penn State College of Medicine academic faculty appointments offered to MSHMC physicians are uncompensated appointments, the physicians are not employees of Penn State University, and these appointments are governed by Policy ACG09 - *Clinical Faculty Appointments for Milton S. Hershey Medical Center or Penn State Health Medical Group, LLC Physicians and Health Care Providers*. It is further admitted that these uncompensated academic faculty appointments are in place only for so long as the physician is employed by MSHMC. The remaining allegations contained in this paragraph are denied.

14. Admitted.

15. Denied. To the contrary, the MSHMC Internal Medicine Residency is a training program for licensed physicians who practice medicine under the supervision of a senior attending

physician in given specialties so as to permit the physician to practice as an independent, licensed clinical physician.

16. Admitted in part; denied in part. It is admitted that residency is a graduate medical education program in which physicians receive supervised clinical training and are evaluated as they progress toward autonomous practice, and that successful completion of residency training is documented by the residency program. It is further admitted that residents are physicians employed by MSHMC who provide patient care pursuant to their Resident Agreements while participating in the graduate medical education program. It is denied that the educational nature of residency negates the employment relationship or that the residency program is exclusively academic rather than both educational and employment-based. The remaining allegations contained in this paragraph are denied.

17. Denied. It is not known what is meant by the term "contract" as Plaintiff was a party to both a Resident Agreement of Appointment and two, subsequent Resident Agreement Renewals. By way of further response, the Resident Agreement of Appointment states that MSHMC "offers a graduate medical education program ("Residency Program") in **Medicine-Internal Medicine**, accredited by the Accreditation Council for Graduate Medical Education (ACGME). Moreover, the ACGME Program Requirements for Graduate Medical Education in Internal Medicine define "graduate medical education" as, in part "the crucial step of professional development between medical school and autonomous clinical practice."

a. Admitted.

b. Admitted in part; denied in part. It is admitted only that some of the cited language is contained in the Resident Agreement of Appointment. It is denied that MSHMC is referred to as "Penn State Hershey Medical Center" anywhere in the document.

c. Admitted

d. Admitted.

18. Admitted.

19. Admitted in part; denied in part. By way of further response, the Grievance and Due Process Policy is a writing that speaks for itself and this writing and the process set forth therein is compliant with ACGME requirements. All allegations that misstate, expand, or narrow the language of this writing are denied.

a. Admitted in part; denied in part. By way of further response, the Grievance and Due Process Policy is a writing that speaks for itself and this writing and the process set forth therein is compliant with ACGME requirements. All allegations that misstate, expand, or narrow the language of this writing are denied.

b. Admitted in part; denied in part. It is admitted only that the Grievance and Due Process Policy is a writing that speaks for itself and this writing and the process set forth therein is compliant with ACGME requirements. All allegations that misstate, expand, or narrow the language of this writing are denied.

c. Admitted in part; denied in part. By way of further response, the Grievance and Due Process Policy is a writing that speaks for itself and this writing and the process set forth therein is compliant with ACGME requirements. All allegations that misstate, expand, or narrow the language of this writing are denied.

d. Admitted in part; denied in part. By way of further response, the Grievance and Due Process Policy is a writing that speaks for itself and this writing and the process set forth therein is compliant with ACGME requirements. All allegations that misstate, expand, or narrow the language of this writing are denied.

i-ii. Admitted in part; denied in part. By way of further response, the Grievance and Due Process Policy is a writing that speaks for itself and this writing and the process set forth therein is compliant with ACGME requirements. All allegations that misstate, expand, or narrow the language of this writing are denied.

e. Admitted in part; denied in part. By way of further response, the Grievance and Due Process Policy is a writing that speaks for itself and this writing and the process set forth therein is compliant with ACGME requirements. All allegations that misstate, expand, or narrow the language of this writing are denied.

i-iv. Admitted in part; denied in part. By way of further response, the Grievance and Due Process Policy is a writing that speaks for itself and this writing and the process set forth therein is compliant with ACGME requirements. All allegations that misstate, expand, or narrow the language of this writing are denied.

f. Admitted in part; denied in part. By way of further response, the Grievance and Due Process Policy is a writing that speaks for itself and this writing and the process set forth therein is compliant with ACGME requirements. All allegations that misstate, expand, or narrow the language of this writing are denied.

20. Admitted in part; denied in part. While it is admitted only that Plaintiff received some positive evaluations while enrolled in MSHMC's residency program, it is denied that these allegations are an accurate or comprehensive summary of his evaluations during and performance in the program. To the contrary, consistent areas of concern were frequently noted with some evaluators describing Plaintiff's performance as "patchy" and "3-4 months behind" his peer

residents. Moreover, during his time in the residency program, there were repeated concerns about Plaintiff's level of professionalism, which required multiple evaluations by the Clinical Competency Committee and his placement on a Performance Improvement Plan (PIP) in June 2025 and, again, in October 2025.

21. Admitted in part; denied in part. It is admitted that Plaintiff was terminated as an employee of MSHMC in connection with a founded accusation that he manufactured an item that was meant to appear to be an email from the Program Director for MSHMC's Internal Medicine Residency, Alia Chisty, MD, MS, which item is identified in the Complaint as the "Chisty Email." The remaining allegations contained in this paragraph are denied.

22. Denied.

23. Denied. To the contrary, an email was created with Plaintiff's Penn State Health account and sent to Plaintiff's personal Comcast email account, which had been renamed to identify itself as "hrsolutions." Thereafter, an email was sent from Plaintiff's Penn State Health account to his Penn State Health account and then again to his Comcast account, which contained the same body contents as the initial email sent to his Comcast account but with an altered "From" line so that it appeared to have been sent from the Penn State Health email account of Dr. Chisty.

24. Admitted in part; denied in part. It is admitted only that the Chisty Email appears to have language indicating that the reader was intended to be under the impression it was sent from Dr. Chisty's email account and it is further admitted that Dr. Chisty did not send the Chisty Email. The HMC Physicians were not provided with the opportunity to review Plaintiff's cellular phone or his Comcast emails and, therefore, lack sufficient knowledge or information to admit or deny the remaining allegations of this paragraph and, accordingly, they are denied.

25. Denied. The HMC Physicians lack sufficient knowledge or information to admit or deny the allegations of this paragraph and, accordingly, they are denied.

26. Admitted.

a. Admitted in part; denied in part. It is admitted only that the Penn State Health Cybersecurity Incident Report (the "Cybersecurity Report") found no signs of compromise or unauthorized access to Dr. Chisty's email account, reviewed audit logs for Plaintiff's Penn State Health email account, and observed an email being created on October 8, 2025, 6:54 PM with the subject of "Urgent: Revocation of vacation Time" and found that this email was sent from Plaintiff's Penn State Health account to Plaintiff's Comcast account and then again to Plaintiff's Penn State Health account and his Comcast account and, based on these facts and other findings made by the investigators – including the use of multi-factor identification to access Plaintiff's Penn State Health account on the registered device – concluded the emails were fabricated by Plaintiff's Penn State Health account. It is also admitted that the drafters of the aforesaid Cybersecurity Report did not interview Plaintiff but, by way of further response, Plaintiff was interviewed by Shane Ulrich in October 2025. By way of further response, this report is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied.

b. Denied.

i. Denied. To the contrary, this report is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied. By way of further response, this section of the timeline indicates the Chisty Email was created at this time by Plaintiff's Penn State Health account.

ii. Denied. To the contrary, this report is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied. By way of further response, this section of the timeline indicates the Chisty Email was forwarded by Plaintiff's Penn State Health email account to his Comcast account.

iii. Denied. To the contrary, this report is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied. By way of further response, this section of the timeline indicates the Chisty Email was then forwarded by Plaintiff's Penn State Health email account to his Penn State Health email account and again to his Comcast account.

iv. Admitted in part; denied in part. It is admitted only that the Cybersecurity Report concluded Plaintiff's account was used to create the Chisty Email and the report did not render a conclusion about Plaintiff's motivations or the author of the Chisty Email as that was not the purpose of or part of Cybersecurity's investigation into the cyber aspects of the events at issue. By way of further response, this report is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied.

v. Denied. By way of further response, the Cybersecurity Report confirmed Plaintiff's Penn State Health account was accessed using multi-factor identification on the registered device. Moreover, Plaintiff refused to provide access to his cellular phone and Comcast emails despite requests for both during the ongoing investigation and appeals process.

27. Denied. By way of further response and without limitation, Ms. Zayas and Ms. Rodrigeuz unequivocally deny these allegations and Plaintiff's email account was accessed using multi-factor identification on the registered device.

a. Admitted in part; denied in part. It is admitted only that Plaintiff claims that someone attempted to end his lease and sent his family HIV testing and cremation items. The remaining allegations contained in this paragraph are denied. By way of further response, Ms. Zayas and Ms. Rodrigeuz have unequivocally denied these allegations to Penn State Health.

28. Denied.

29. Denied.

a-d. Denied.

i. Admitted in part; denied in part. It is admitted only that Dr. Yin's submission in support of Plaintiff's appeal contained the cited quotations. It is denied these statements are accurate. By way of further response, this statement was considered in connection with Plaintiff's appeal.

ii-v. Denied.

30. Admitted in part; denied in part. It is admitted that Plaintiff was placed on administrative leave on October 21, 2025, and removed from his clinical assignment while MSHMC investigated allegations concerning the email at issue. The remaining allegations are denied.

31. Admitted in part; denied in part. It is admitted only that Plaintiff was twice interviewed by Mr. Ulrich. The remaining allegations contained in this paragraph are denied. By way of further response, MSHMC did, in fact, possess conclusive evidence that Plaintiff created the Chisty Email.

32. Denied. To the contrary, by way of correspondence dated November 6, 2025, Plaintiff was terminated as an employee of MSHMC, effective October 30, 2025. This report is a

writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied.

33. Admitted in part; denied in part. It is admitted only that Plaintiff was not provided with the Cybersecurity Report at this time, nor was he informed as to how MSHMC became aware of the Chisty Email. The remaining allegations contained in this paragraph are denied. By way of further response, Plaintiff was informed of the findings of the Cybersecurity Report during his interviews with Mr. Ulrich.

34. Admitted.

a. Denied.

b. Admitted.

c. Denied. To the contrary, Plaintiff was given the opportunity to present his case and to present oral and written statements in support of his appeal but declined to do so in lieu of submitting an 11-page letter prepared by his counsel.

35. Denied as stated. To the contrary, the Clinical Competency Committee heard Plaintiff's appeal but denied it.

a. Admitted in part; denied in part. It is admitted only that, in a subsequent December 22, 2025 correspondence, Dr. Ghahramani advised that the Cybersecurity Report shows that multi-factor identification (either passcode or facial recognition) was used. The remaining allegations contained in this paragraph are denied. By way of further response, the Cybersecurity Report states as follows: "Login to Dr. Jacobs (bjacobs2) account with successful MFA from Verizon IP in Hummelstown, Pennsylvania. (Note: Time in this log is in UTC which converts to October 8, 2025, at 06:52 PM)."

b. Admitted in part; denied in part. The December 22, 2025 correspondence from Dr. Ghahramani to Plaintiff is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied. It is admitted only that this writing contains the cited excerpt.

36. Admitted in part; denied in part. It is admitted only that one of Plaintiff's attorneys emailed Penn State Health's Office of General Counsel with a lengthy email that contained this excerpted language. By way of further response, this email is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied. It is further denied that the email uses the term "Penn State Milton S. Hershey Medical Center" and, in fact, it uses the term "Penn State Health."

a. Denied. To the contrary, there was an ongoing dialogue between Plaintiff's former counsel and Jacob Theis of Penn State Health's Office of General Counsel with the latter's response to the November 21, 2025 email coming only a few days later. The selected excerpts are contained in a December 22, 2025 email from Mr. Theis, which is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied.

b. Admitted in part; denied in part. Plaintiff's former counsel's December 22, 2025 email is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied. It is admitted only that this writing contains the cited excerpt.

37. Admitted in part; denied in part. It is admitted only that this language is contained in a November 26, 2025 correspondence from Dr. Rebecca Bascom to Dr. Ghahramani. This letter is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied. The remaining allegations contained in this paragraph are denied.

a. Admitted in part; denied in part. It is admitted only that this language is contained in a February 9, 2026 correspondence from Dr. Bascom to Dr. Ghahramani. This letter is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied. The remaining allegations contained in this paragraph are denied.

b. Admitted in part; denied in part. It is admitted only that this language is contained in a November 26, 2025 correspondence from Dr. Bascom to Dr. Ghahramani. This letter is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied. The remaining allegations contained in this paragraph are denied.

c. Admitted in part; denied in part. It is admitted only that this language is contained in a November 26, 2025 correspondence from Dr. Bascom to Dr. Ghahramani. This letter is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied. The remaining allegations contained in this paragraph are denied.

38. Admitted in part; denied in part. It is admitted only that Dr. Ghahramani's December 22, 2025 correspondence indicates that MSHMC possessed the listed forms of evidence along with three other categories of evidence submitted by Plaintiff. It is further admitted that, at this point, Plaintiff had only received a redacted copy of the Cybersecurity Report. By way of further response, this letter is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied. The remaining allegations contained in this paragraph are denied.

39. Admitted in part; denied in part. It is admitted only that Plaintiff was provided with a redacted copy of the Cybersecurity Report and was not provided with the other evidence, much of which was already in his possession. The remaining allegations contained in this paragraph are denied.

40. Admitted.

41. Admitted in part; denied in part. It is admitted only that Dr. Yin provided a written statement that contained the cited language and that this statement purported to reference a text chain between Dr. Yin, Ms. Zayas, and Ms. Rodriguez. It is denied that this text chain is authentic or what it purports to be. By further response, this letter is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied. The remaining allegations contained in this paragraph are denied.

42. Admitted.

a. Admitted in part; denied in part. It is admitted that Dr. Ghahramani was informed that multi-factor identification was used as this fact is reflected in the Cybersecurity Report. It is denied that Penn State Health's counsel made any false statement generally or as to Dr. Ghahramani.

b. Admitted.

c. Admitted in part; denied in part. It is admitted only that Plaintiff was given an opportunity to present oral and written statements in support of his position and all of his submitted materials were considered. The remaining allegations contained in this paragraph are denied.

43. Admitted in part; denied in part. Plaintiff unilaterally sat for a polygraph examination and produced a report to MSHMC. It is denied that the investigator "tested whether Dr. Jacobs composed the October 8 email or accessed his supervisor's account." To the contrary, the report states that its purpose was to "verify whether the subject was being truthful regarding whether he falsified an E-mail correspondence on October 8, 2025 from his supervisor identified

as Alia Christy." By way of further response, this report is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied.

44. Admitted in part; denied in part. It is admitted that Dr. Ghahramani denied Plaintiff's appeal. The remaining allegations contained in this paragraph are denied. By way of further response, the next level of appeal was titled the "Graduate Medical Education (GME) Level Review."

45. Admitted in part; denied in part. It is admitted only that Plaintiff was provided with a copy of the agenda and responded with an email containing the quoted language. The remaining allegations contained in this paragraph are denied.

a. Admitted in part; denied in part. It is admitted only that Plaintiff's email contains the quoted language. The remaining allegations contained in this paragraph are denied. By way of further response, the hearing was adjourned until March 18, 2026 to allow for Plaintiff to produce additional evidence, which he ultimately declined to do.

b. Admitted in part; denied in part. It is admitted only that Plaintiff's email contains the quoted language. The remaining allegations contained in this paragraph are denied.

c. Admitted in part; denied in part. It is admitted only that Plaintiff's email contains the quoted language. The remaining allegations contained in this paragraph are denied.

d. Admitted in part; denied in part. It is admitted only that Plaintiff's email contains the quoted language. The remaining allegations contained in this paragraph are denied.

46. Admitted in part; denied in part. It is admitted only that Plaintiff obtained and produced a February 5, 2026 report that contains the cited language. The remaining allegations contained in this paragraph are specifically denied. By way of further response, this report is a

writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied.

a-d. Admitted in part; denied in part. It is admitted only that the February 5, 2026 report states as such. The remaining allegations contained in this paragraph are specifically denied. By way of further response, this report is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied. Moreover, the report only makes allegations as to what could have been done and undertakes no analysis as to what was done or makes any effort to refute the Cybersecurity Report's conclusions, including the use of multi-factor authentication on Plaintiff's registered device.

47. Admitted in part; denied in part. It is admitted only that this language is contained in a February 9, 2026 correspondence from Dr. Bascom to Dr. Ghahramani. This letter is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied. The remaining allegations contained in this paragraph are denied.

a. Admitted in part; denied in part. It is admitted only that this language is contained in a February 9, 2026 correspondence from Dr. Bascom to Dr. Ghahramani. This letter is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied. The remaining allegations contained in this paragraph are denied.

b. Admitted in part; denied in part. It is admitted only that an administrative employee from Penn State Health's Office of General Counsel emailed Dr. Bascom to request a meeting per her February 9, 2026 offer to provide assistance by appearing before the committee and that, following her refusal to do so, Mr. Ulrich wrote an email to Dr. Bascom confirming she would not meet with Human Resources or Legal and advising of the presumption that she was withdrawing her letter and support of Plaintiff. It is further admitted that the colloquy ended with

Dr. Bascom's outside counsel baselessly threatening a violation of Pennsylvania's Whistleblower Law. The remaining allegations contained in this paragraph are denied. By way of further response, prior to Mr. Ulrich's email and in response to the initial email, Dr. Bascom reached out to Dr. Ghahramani and advised she would only be willing to act as a mentor to Plaintiff. Thereafter, Dr. Bascom's counsel reached out to Penn State Health's Office of General Counsel and reneged on Dr. Bascom's offer to appear before the committee, offering instead to answer "reasonable" questions in writing that would clarify the content of Dr. Bascom's admittedly-lengthy letter. By way of further response, the aforementioned letters and emails are writings that speak for themselves. All allegations that misstate, expand, or narrow the language of these writings are denied. The remaining allegations contained in this paragraph are denied.

48. Denied as stated. To the contrary, the parties mutually agreed (among counsel) to postpone the hearing to allow Plaintiff to submit additional evidence, which Plaintiff ultimately declined to provide. The remaining allegations contained in this paragraph are denied.

49. Admitted in part; denied in part. It is admitted only that this language is contained in a March 19, 2026 email from Plaintiff's former counsel to Penn State Health's General Counsel. This letter is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied.

50. Denied. To the contrary, Plaintiff appeared for his GME Level Review on March 18, 2026, which consisted of a panel that included Dr. Clebak, Dr. Ahmed Hameed, Dr. Berend Mets, Dr. Max Lowden, and Dr. Nicholas D'Alonzo.

a. Admitted.

b. Admitted in part; denied in part. It is admitted only that Plaintiff was given an opportunity to present oral and written statements in support of his position and all of his

submitted materials were considered. The remaining allegations contained in this paragraph are denied.

c. Denied.

51. Admitted in part; denied in part. It is admitted only that this language is contained in a March 24, 2026 correspondence from Dr. Clebak to Plaintiff. This letter is a writing and speaks for itself. All allegations that misstate, expand, or narrow the language of this writing are denied.

**COUNT I**

**VIOLATION OF DUE PROCESS**

52. Denied. This is a paragraph of incorporation to which no response is required. To the extent a response is required, the HMC Physicians incorporate the preceding and subsequent paragraphs of this Answer with Affirmative Defenses as though set forth at length herein.

53. Admitted in part; denied in part. It is admitted only that Plaintiff has made such a claim. It is denied that Plaintiff is entitled to any requested relief.

54. Admitted in part; denied in part. It is admitted only that Plaintiff has made such a claim. It is denied that Plaintiff is entitled to any requested relief.

55. Admitted in part; denied in part. It is admitted only that this is an accurate statement of the language of the Fourteenth Amendment. It is denied the Fourteenth Amendment applies to the conduct of the HMC Physicians.

56. Denied. The allegations contained in this paragraph are denied. To the contrary, the residency program in which Plaintiff was enrolled in at all times material hereto was an MSHMC program. By way of further response, Plaintiff was a physician employed by a private entity in that entity's residency program and neither MSHMC nor any of its employees can violate any purported constitutional rights claimed by Plaintiff.

57. Denied. The HMC Physicians incorporate the preceding and subsequent paragraphs of this Answer with Affirmative Defenses as though set forth at length herein.

58. Denied. The HMC Physicians incorporate the preceding and subsequent paragraphs of this Answer with Affirmative Defenses as though set forth at length herein.

a. Denied. To the contrary, Plaintiff was a physician employed by MSHMC and enrolled in an MSHMC-sponsored graduate medical education program and neither MSHMC nor any of its employees can violate any purported constitutional rights claimed by Plaintiff

b. Denied. The HMC Physicians incorporate the preceding and subsequent paragraphs of this Answer with Affirmative Defenses as though set forth at length herein.

c. Denied. The HMC Physicians incorporate the preceding and subsequent paragraphs of this Answer with Affirmative Defenses as though set forth at length herein.

59. Denied. The HMC Physicians incorporate the preceding and subsequent paragraphs of this Answer with Affirmative Defenses as though set forth at length herein. By way of further response, Plaintiff was provided all process due and owing under the applicable policy.

60. Admitted.

61. Denied. The HMC Physicians incorporate the preceding and subsequent paragraphs of this Answer with Affirmative Defenses as though set forth at length herein.

a-(b)(i)-(vi). Denied. The HMC Physicians incorporate the preceding and subsequent paragraphs of this Answer with Affirmative Defenses as though set forth at length herein.

62. Admitted in part; denied in part. It is admitted only that Plaintiff and the HMC Physicians (aside from Dr. Black) have a dispute regarding the applicable policy. The remaining allegations contained in this paragraph are denied. Moreover, it is not known what is meant by the

term "official capacity." To the extent this term is meant to refer to Dr. Clebak's and Dr. Ghahramani's uncompensated academic faculty appointments, this allegation is denied. To the contrary, at all times material hereto, Dr. Clebak and Dr. Ghahramani were acting as employees of MSHMC and not as academic faculty members of Penn State College of Medicine.

a. Admitted. By way of further response, Plaintiff was provided all process due and owing under the applicable policy. Moreover, at Plaintiff's request, he was permitted to continually provide additional evidence at various stages of the proceedings that was considered on appellate review even though he had not provided such evidence in the first instance. In addition, Plaintiff declined/reneged to produce purportedly-exculpatory evidence that was requested of him and was admittedly in his possession/control.

b. Denied.

c. Denied.

63. Denied.

64. Denied.

65. Admitted in part; denied in part. It is admitted that Plaintiff has demanded a jury trial. The HMC Physicians deny that Plaintiff is entitled to a jury trial as Plaintiff has agreed to a bench trial.

**WHEREFORE**, Defendants, Karl T. Clebak, MD, Kevin P. Black, MD, and Nasrollah Ghahramani, MD, MS, FACP, deny they are liable to Plaintiff, Brian Conor Jacobs, M.D., and demand dismissal of this lawsuit, with prejudice, along with award of costs and attorneys' fees and any and all relief that this Honorable Court deems just and proper.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiff's claim is barred, precluded, and/or limited in whole or in part by the applicable statutes of limitations.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiff's claim is barred by the doctrine of unclean hands.

**FOURTH AFFIRMATIVE DEFENSE**

The HMC Physicians' alleged acts/omissions did not cause or contribute to any alleged losses, damages, or harm.

**FIFTH AFFIRMATIVE DEFENSE**

If Plaintiff sustained any damages or losses, then it is averred that said damages or losses were due to the actions, conduct, or omissions of other persons/entities which the HMC Physicians did not control or have a right to control, including Plaintiff himself.

**SIXTH AFFIRMATIVE DEFENSE**

The HMC Physicians did not act recklessly, intentionally, willfully, maliciously, with reckless indifference, and/or with the requisite mental intent to provide for a claim of punitive damages.

**SEVENTH AFFIRMATIVE DEFENSE**

Neither the HMC Physicians nor MSHMC are or were at any time material hereto state actors, nor did they act under color of state law.

**EIGHTH AFFIRMATIVE DEFENSE**

The MSHMC residency program is a program sponsored by and overseen by MSHMC, not Penn State University.

**NINTH AFFIRMATIVE DEFENSE**

Both Penn State Health and MSHMC are domestic non-profit corporations that are separate and distinct from Penn State University.

**TENTH AFFIRMATIVE DEFENSE**

Plaintiff received all process due and available under the applicable grievance policy.

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiff declined and/or failed to avail himself of and/or participate in the applicable grievance policy/process by, *inter alia*, refusing to provide and/or provide access to requested evidence and pieces of information.

**TWELFTH AFFIRMATIVE DEFENSE**

Cross-examination is not a necessary element of process in this matter as the determination of misconduct did not hinge solely or even largely on matters of witness credibility.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Equitable/injunctive relief is not in order as the harm to the HMC Physicians and MSHMC would be severe and greater than any harm to Plaintiff under the total circumstances.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Equitable relief is not in order as Plaintiff's recovery is limited to receipt of any purported process he alleges he was due.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Plaintiff committed the accused-of actions.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Plaintiff's claim for equitable/relief is not appropriate as – in addition to the acts at issue Plaintiff violated Penn State Health policies related to conduct and employee relationships and

self-disclosure of criminal charges/convictions and, thus, may have been dismissed for these reasons.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Plaintiff's claim for equitable/relief is not appropriate as – in addition to the acts at issue – Plaintiff received multiple cease and desist letters from, *inter alia*, an employee of Penn State Health and Penn State Health generally due to harassing and threatening conduct and entering the requested relief would impose significant harm upon these third parties and Penn State Health.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

Plaintiff was not entitled to review all evidence against him under the applicable policy and principles of due process did not require provision of additional/all information.

**NINETEENTH AFFIRMATIVE DEFENSE**

Providing Plaintiff with all evidence against him was inappropriate under the circumstances due to, *inter alia*, a credible belief of retaliation and adverse action.

**TWENTIETH AFFIRMATIVE DEFENSE**

Provision of additional process would have been futile as the outcome would have been the same.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiff's claims regarding his dismissal from the residency program are invalid because Plaintiff has not challenged his termination as an employee of MSHMC due to misconduct that violated a Penn State Health policy and this action required the attendant termination of his status as a resident.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

Plaintiff was aware of the sum and substance of the evidence supporting the accusations against him.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

The accusations against Plaintiff were based on founded, objective evidence that Plaintiff failed to challenge and/or refute even after he was provided with a copy of that evidence.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

This is a frivolous litigation, entitling the HMC Physicians to an award of sanctions, fees, and costs under Federal Rule of Civil Procedure 11.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

Plaintiff received notice and a meaningful opportunity to be heard with respect to the accusations against him at each level of the grievance process.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

Any purported deviation from established or required process was *de minimis* and inconsequential in light of the strength of the unrefuted and objective evidence supporting the accusations against Plaintiff.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

Adequate post-deprivation remedies exist for Plaintiff, thereby precluding his claim.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

Plaintiff did not experience a loss of a protected life, liberty, or property interest.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

Plaintiff is not entitled to an award of costs of attorneys' fees.

**THIRTIETH AFFIRMATIVE DEFENSE**

Plaintiff's dismissal as a resident was a human resources decision made by a private entity.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiff's statements and allegations regarding his experiences in and conduct while enrolled in the residency program are conclusory, incomplete, inaccurate, revisionist, and misleading. A complete and accurate summary and history of Plaintiff's experiences in and conduct while enrolled in the residency program is contained in the various documents created during Plaintiff's time in the program, all of which are in writing and speak for themselves.

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

The HMC Physicians incorporate their denials and responses to the various allegations of Plaintiff's Complaint as separate affirmative defenses as though set forth at length herein.

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

The HMC Physicians are not liable for any damages, including punitive damages.

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

Plaintiff failed to mitigate his damages, if any.

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's claims may be barred by waiver, estoppel, and/or laches.

**THIRTY-SIXTH AFFIRMATIVE DEFENSE**

In the event Plaintiff was entitled to due process, the process provided was constitutionally sufficient.

**THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

Even if what Plaintiff claims was purportedly "fair" and/or "due" process was provided to Plaintiff, the result would have been the same, thereby precluding and/or limiting Plaintiff's claim.

**THIRTY-EIGHTH AFFIRMATIVE DEFENSE**

The only form of relief to which Plaintiff has any entitlement is provision of the forms of process that were allegedly not provided and/or potentially nominal damages.

**THIRTY-NINTH AFFIRMATIVE DEFENSE**

Plaintiff's claim may be barred and/or limited by the after-acquired evidence doctrine.

**FORTIETH AFFIRMATIVE DEFENSE**

At all times material hereto, Plaintiff was an at-will employee and his termination was in compliant with the applicable Residency Contract and its renewals.

**FORTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiff's claim may be barred and/or limited for lack of timeliness and failure to exhaust administrative and/or statutory remedies.

**FORTY-SECOND AFFIRMATIVE DEFENSE**

The HMC Physicians incorporate the content of all documents cited in the Complaint and/or relevant to this matter, including the grievance policy, the Cybersecurity Report, the Residency Contract, and the applicable ACGME regulations.

**FORTY-THIRD AFFIRMATIVE DEFENSE**

Kevin P. Black, MD had no involvement in the events giving rise to Plaintiff's claim and he has been inappropriately named in this lawsuit and should be dismissed.

**FORTY-FOURTH AFFIRMATIVE DEFENSE**

The HMC Physicians may be entitled to immunity, including qualified immunity, for their actions at all times material hereto and, therefore, cannot be held individually liable.

**FORTY-FIFTH AFFIRMATIVE DEFENSE**

At all times material hereto, the HMC Physicians acted in good faith and with a reasonable belief that their actions were lawful.

**FORTY-SIXTH AFFIRMATIVE DEFENSE**

The HMC Physicians reserve the right to amend and supplement these affirmative defenses and assert additional affirmative defenses as may be determined necessary during the course of discovery.

**WHEREFORE**, Defendants, Karl T. Clebak, MD, Kevin P. Black, MD, and Nasrollah Ghahramani, MD, MS, FACP, deny they are liable to Plaintiff, Brian Conor Jacobs, M.D., and demand dismissal of this lawsuit, with prejudice, along with award of costs and attorneys' fees and any and all relief that this Honorable Court deems just and proper.

Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

Dated: August 20, 2026

By: */s/Geoffrey S. Sasso*
Geoffrey F. Sasso (Pa. ID 202936)
Anthony (T.J.) Andrisano (Pa ID 201231)
Makenzie P. Leh, Esq. (PA. ID. 333895)
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102
T: 215-665-8700
F: 215-665-8760
geoffrey.sasso@bipc.com
anthony.andrisano@bipc.com
makenzie.leh@bipc.com

*Attorneys for Defendants, Karl T. Clebak, MD, Kevin P. Black, MD, and Nasrollah Ghahramani MD, MS, FACP*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and complete copy of the foregoing document was filed through the CM/ECF system and will be served electronically to the registered participants as identified on the Notice of Electronic Filing.

Dated: August 20, 2026

By: *<u>/s/ Geoffrey F. Sasso</u>*
*Attorney for Defendants, Karl T. Clebak, MD,*
*Kevin P. Black, MD, and Nasrollah Ghahramani*
*MD, MS, FACP*